PENNSYLVANIA STEEL CO. et al. v. NEW YORK CITY RY. CO. et al.

(District Court, S. D. New York. December 18, 1912.)

Eq. Nos. 2—9, 2—33, 2—149, 3—37.

STREET RAILROADS (§ 58*)—INSOLVENCY AND RECEIVERS—DISTRIBUTION OF ASSETS—LESSOR AND LESSEE COMPANIES.

Decretal orders settled for the apportionment and distribution of the fund realized from the settlement of two suits by the receivers of the New York City Railway Company as between them and the receivers of the Metropolitan Street Railway Company.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 135; Dec. Dig. § 58.*]

In Equity. Suits by the Pennsylvania Steel Company and another against the New York City Railway Company and another, by the Farmers' Loan & Trust Company against the Metropolitan Street Railway Company and others, by the Guaranty Trust Company of New York against the Metropolitan Street Railway Company and others, and one other cause. On applications for settlement of decretal orders.

For prior opinions, see 196 Fed. 661, and 198 Fed. 778.

Theo. W. Morris and Matthew C. Fleming, both of New York City, for City receiver.

A. H. Masten and Wm. M. Chadbourne, both of New York City, for Metropolitan receiver.

James Byrne, of New York City, for Pennsylvania Steel Co.

Brainard Tolles, of New York City, for Guaranty Trust Co.

Bronson Winthrop, of New York City, for Farmers' Loan & Trust Co.

Richard R. Rogers, of New York City, for New York Railways Co.

Benj. S. Catchings, of New York City, for tort creditors.

LACOMBE, Circuit Judge. The first application is in the proceeding, which has been designated, "Apportionment Proceeding." That proceeding is concerned with the apportionment between the Metropolitan and the City Company of the proceeds of the two litigations prosecuted by the receiver of the City Company. The application is for the entry of decree upon the mandate of the Circuit Court of Appeals. See 198 Fed. 778. That mandate was not specific in form. It directed this court to enter a decree in, conformity with the views expressed in the opinion of the appellate court. Upon the argument there appeared to be a great diversity of opinion as to precisely what language would correctly express that opinion. When, however, the opinion is studied in connection with other opinions of the same tribunal delivered at the same time, it is thought that the proper disposition of the pending application is not obscure. The decretal order which was appealed from was in the form of answers to three separate questions. These questions and answers are set forth in full in the opinion of the Court of Appeals.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

The first question asked in what proportion the proceeds of the settlement should be apportioned. The answer to that question, as stated by the circuit court, was approved.

The second question asked to what part of such proceeds the Metropolitan Company or its receivers were entitled; or, to state it differently, whether the City Railway receiver, now the custodian of the fund, is entitled to deduct any, and, if so, what, sums from the distributive share of the Metropolitan. The trial court held that there should be four classes of deduction, as follows: (1) A certain specific sum of money amounting to $234,483.81. (2) A sum representing expenditures made by the City Company upon the Twenty-Third Street loop and the First Avenue line, and all such other expenditures made and obligations incurred by the City Company prior to the appointment of receivers on September 24, 1907, for purposes described in article 15 of the lease of February 14, 1902, an accounting to be had to ascertain the amount of such expenditures. (3) A sum representing expenditures and obligations of a similar character (viz., for purposes described in said article 15) made by receivers of the City Company after their appointment down to the time when the lease should "be deemed to have been no longer in effect." (4) In the event of the Court of Appeals holding that the lease became inoperative on October 1, 1907, a sum representing the amount of all money and the value of all property belonging to the City Company which came into possession of the receivers of the Metropolitan, or for which the estate of the Metropolitan Company may be held accountable to the estate of the City Company.

In the memorandum which was filed April 8, 1912, when this decretal order was made ([D. C.] 196 Fed. 661), it was said:

"By reason of the circumstance that the numerous questions arising under these receiverships came up for determination in separate proceedings, inconsistences sometimes appear * * * in the deliverances of the court. For example, in this proceeding no attention is paid to the question when the lease terminated. The opinion proceeds on the assumption that capital disbursements made by receivers after October 1, 1907, were made by them as City Company receivers with City Company money. That assumption is apparently inconsistent with the opinion heretofore expressed that after that date the receivers were not operating the road under the lease. Until the court of Appeals finally decides the one question, there can be no final decision of the other. If this court's decision as to the lease be sustained, then there will be no disbursements by receivers subsequent to October 1st to be deducted from the Metropolitan's distributive share. In the place of such deduction, however, the New York City receiver would have a good claim against Metropolitan's distributive share for any money or property of its own which was used by Metropolitan receivers subsequent to October 1st."

The Court of Appeals in its opinion approved this answer to question 2, "except that subdivisions 3 and 4 are to be reserved for disposition in future proceedings." It will be observed that the matters treated of in these subdivisions could not be made definite and certain until it was finally determined on what date the lease of February 14, 1902, and the obligations created thereby ceased to be a factor in determining the incidence of expenditures for operation, maintenance, repair, and betterment of the property. At the time the decretal

order was entered that date was uncertain. The master held it was September 24, 1907. The writer, sitting at circuit, held it was October 1, 1907. Various interests contended strenuously that it was August 1, 1908. At the time the opinion of the Court of Appeals was filed that question had not been finally determined. Presumably the members of that court had already agreed as to what they would decide in the proceeding, called inartificially the "termination of the lease proceeding," possibly they had concurred in the opinion to be handed down in that proceeding, but the dispute as to date would not be finally determined until the mandate in that proceeding was signed, and the decision not modified on rehearing or certiorari.

Since then, however, that question has been finally determined. It is now settled that the date was September 24, 1907, and the opinion which sets forth the reasons for that conclusion is so clear and specific as to the rights and obligations of the parties that it would seem nothing further is needed to dispose of the two subdivisions which were reserved for future proceedings. The Court of Appeals says:

"The expenditures during the dual receivership (September 24, 1907, to August 1, 1908) were for the preservation and improvement of the Metropolitan property, and every equitable consideration requires that they should be borne by the Metropolitan, and not by the City, interests."

If there be enough now settled to dispose of these two subdivisions, it would certainly seem that this should now be done, so that some progress can be made towards distribution, rather than to initiate new proceedings to present again the same questions which were presented in the decretal order appealed from.

The receivership during the period in question is called "dual" because the same individuals were receivers of both roads; but, so far as rights and obligations and action taken by receivers are concerned, the situation is the same as if there had been one set of receivers for one road and another set for the other one, all working together to see to it that the interests of the public should not suffer, while those of each road should be faithfully looked after. This was the theory of the situation adopted by the Circuit Court early in the proceeding, that the system should be run somehow, and the burden of doing so be settled afterwards, as a "mere matter of bookkeeping." There is nothing in the opinion of the Court of Appeals to indicate that this theory was a mistaken one. The logical application of this theory clarifies the situation. There were expenditures by receivers after September 24, 1907, for operation, for rentals and similar obligations, for maintenance, repairs, and improvements. Property of the City road was used for these expenditures. The simplest illustration is found in the cash on hand, about $600,000 which belonged to the City Company and which was thus expended. Such expenditures were, as the Court of Appeals has held, for the preservation and improvement of the Metropolitan property, and to be borne by it, not by the City interests. What would have been the course of proceeding if there had been separate receivers? The Metropolitan receivers, needing $600,000 in cash instantly available, would have applied to New York receivers to advance it, just as they might have applied to any lender

of money to advance it on receiver's certificates. The City receivers, knowing these expenditures should be borne by the Metropolitan and that corpus of the property was sufficient to make the loan a safe one, advanced the $600,000, feeling assured that, when the accounting came, the advance would be restored. In reality, therefore, the expenditure of the $600,000 was an expenditure of Metropolitan receivers with money of their own, which they had obtained from their associates the City receivers. It is not perceived that the circumstance that the same persons were receivers of both roads operates in any way to the prejudice of such accounting. In this view of the situation subdivision 3 of the original decretal order should be expunged. The City receiver is not entitled to deduct anything from the Metropolitan distributive share for expenditures or obligations made or incurred by the City receivers for purposes of article 15 subsequent to September 24, 1907, because the City receivers never made any such expenditures.

As to subdivision 4, it is now settled that the lease ceased to be a factor in determining the incidence of expenditures on or about the property on the very day receivers were appointed, September 24, 1907; that from that time on all such expenditures were to be borne by Metropolitan, not by City, interests. This being determined, there seems to be no reason why the point reserved as to this subdivision should not now be determined. It is not disputed that money and property of the City Company were after that date turned over by its receivers to Metropolitan receivers, and used by the latter for Metropolitan purposes. The amount of such money and property can, of course, be determined only by an accounting; but it seems so clear that such money and property was not a gift, but a loan to receivers, that no force is found in the suggestion that the amount of such loan should not be included among the items of deduction from Metropolitan's distributive share before such share is turned over by its custodian, the present receiver of the City Company. This loan is made up of various classes of property. There was cash in the safe, in banks, and trust companies; there were bills receivable the proceeds of which were taken by Metropolitan receivers; there were possibly some tools not in use as a part of the equipment; there were materials and supplies of many different sorts; finally, there were credits of a peculiar sort. When receivers' certificates were issued and sold, they were made a lien, not only on the property of the Metropolitan, but also of the City Company. This was done by direction of the Court of Appeals, probably to make the security attractive to the purchaser. That court reserved the question as to who should ultimately respond for them. In this connection reference may be made to opinion of this court filed November 12, 1912. Had it been known at the time that all expenditures after September 24, 1907, were to be borne by Metropolitan, not by City, interests, this presumably would not have been done. But it has been done and cannot be undone. The lien which the purchaser of those certificates has cannot be destroyed or impaired. It is understood that these certificates have been renewed, and are not yet paid. If they be not redeemed, the holders will en-

force payment as they most conveniently can. If liquid assets of the City Company are available, the holders may, for aught any one can now tell, enforce the lien against them. If the City property is thus made to pay these certificates, or any part of them, the proceeds of such certificates being used for expenditures which should have been borne by Metropolitan and not by City interests "every equitable consideration," to use the language of the Court of Appeals, requires that the City Company should be reimbursed for its property, thus appropriated to meet obligations of the Metropolitan receivers. No good reason appears why such reimbursement should not be made out of the distributive share of the Metropolitan now in the hands of the City receiver.

It has been suggested that the Court of Appeals has held that the Metropolitan's share of the fund should be treated as assets for the benefit of general creditors. It is thought that this proposition in no way interferes with the present application, or with the City receiver's right to payment of the money and property loaned to the Metropolitan receivers. If, when the latter receivers are accounting with the different Metropolitan interests, it should be held that such repayment ought to have been made by them out of some other fund (such as the $12,000,000 cash proceeds of sale), they will no doubt then be required to take out of that fund sufficient to replenish this one. No opinion is expressed on such question because it does not arise on this application.

These views may be expressed by amending the decree on mandate now proposed by counsel for the City Company as follows:

1. By striking out everything from the words "(3) the receiver of the City Company" on page 6 to and including the words, "to reimbursement or to have deducted," being the concluding words of the first paragraph on page 7.

2. By substituting for the part thus struck out the following:

"(3) The receiver of the New York City Railway Company is also entitled to reimbursement for all money and property belonging to the City Company, which came into the possession of the receivers of the Metropolitan Company on or subsequent to September 24, 1907, and for all money and property of the City Company which may have been or may hereafter be paid out to redeem any of the receiver's certificates sold under the order of June 2, 1908, or issued in renewal of such certificates."

In the opinion of the Court of Appeals in this proceeding, the entire answer to question 3 in the original decretal order was approved, with the proviso that the deductions mentioned in said answer should be those contained in subdivisions 1 and 2 of question 2. The proposed order on mandate provides that the share of the notes apportioned to the equity suit are hereby allowed as a claim against the Metropolitan estate. This subject apparently is not discussed in the opinion of the Court of Appeals. A less positive form of words should be used.

The proposed decree on mandate should therefore be amended as follows:

3. By striking out the small paragraph in quotation marks on page 7 and substituting the following:

"The deductions mentioned in this answer are those enumerated in subdivisions 1 and 2 of question 2. Nothing herein contained shall be held to prejudice an application of the receiver of the City Company to have the share of the notes apportioned to the equity suit allowed as a claim against the estate of the Metropolitan Company."

Nothing was said in the original decretal order about distribution of accretions of interest on the fund of $5,500,000. To avoid all uncertainty, there should be inserted in the proposed order the following:

4. On page 7 immediately before the words, "II. That such decree as so modified," insert the following:

"In case the accretions of interest upon the fund of $5,500,000 shall exceed the amount of all disbursements, counsel fees and other expenses referred to in subdivision (b) of the answer to Question 1, such surplus accretions shall be distributed in the same proportion as the principal sum upon which they shall have accrued."

Counsel for the City receiver may prepare a new order amended as above indicated, and give notice of the settlement thereof, so that, if anything has been overlooked in this memorandum, it may be considered.

### Petition to Sell Certain Property.

When the writ of error was sued out to review the judgment in the action at law which was subsequently included in the settlement, whose proceeds are the subject of this proceeding, certain items of property were deposited as security to stay execution. It has been held that these should be applied pro tanto to the satisfaction and payment of the judgment in the action at law before apportionment is made. In order to do this, it is necessary that they be sold by the present receiver of the City Company, who is now the custodian of the whole fund. The Metropolitan receiver now asks that such sale be ordered, enumerating all the items in his petition.

In opposition to this application counsel for the City receiver calls attention to the following facts:

(1) The note of the Third Avenue Railway Company, dated February 21, 1907, for $107,100, has been surrendered to that company pursuant to the terms of a settlement approved by this court December 28, 1911.

(2) The note of the New York City Railway Company, dated April 1, 1907, for $5,000,000, to the order of the Metropolitan Securities Company, was satisfied and discharged as part of the settlement of July 8, 1910.

(3) The 130,000 shares of the capital stock of New York City Railway Company is to be held and accounted for by the receiver of City Company under the stipulation made in this proceeding with reference thereto.

These items, therefore, will not be included in the sale. An order for the sale of the other items, with sufficient provisions for notice may be submitted.

## Accountings in This Proceeding.

Upon motion of Metropolitan receiver the special master will be instructed to take testimony and report as to the amount of disbursements, counsel fees, and other expenses in connection with the prosecution and settlement of the claims involved in the action at law and in the suit in equity, in conformity with the provisions of the decree to be entered on the mandate in this proceeding—subdivision (b) of the answer to Question 1. The special master is further instructed to take testimony and report as to all expenditures of the sort described ·in subdivision 2 of the answer to Question 2, as stated in the decree to be entered on ·the mandate in this proceeding.

## Accounting for City Property Used Subsequent to Appointment of Receivers.

The City receiver has applied for an order instructing the special master to take testimony and report as to the amount of cash and personal property of the City Company which was taken by receivers on September 24, 1907, and used for Metropolitan purposes. This is the cash and property heretofore referred to in this opinion. Such an order may be prepared and submitted. It should be broad enough to include any counterclaims and offsets which Metropolitan receiver may present.

These several orders will be settled· on notice.